## Case No. 5,278.

### GAUTIER et al. v. ARTHUR.

[13 Blatchf. 432;[1] 22 Int. Rev. Rec. 256.]

Circuit Court, S. D. New York. June 22, 1876.[2]

CUSTOMS DUTIES—DISCRIMINATING DUTIES OF ACT OF JUNE 30, 1864—REPEALING ACT OF 1872.

By section 18 of the act of June 30, 1864 (13 Stat. 216), all goods, wares and merchandise of the growth or produce of countries east of the Cape of Good Hope, (except raw cotton,) when imported from places west of the Cape of Good Hope, were subjected to a discriminating "duty of ten per centum ad valorem, in addition to the duties imposed on any such articles when imported directly from the place or places of their growth or production." By section 5 of the act of June 6, 1872 (17 Stat. 233), certain articles were declared to be "exempt from duty." The act of 1872 did not have the effect to repeal the act of 1864, so as to exempt from such discriminating duty articles falling within the description in the act of 1864, although they were articles made exempt from duty by the act of 1872.

[This was an action at law by James Gautier and another against Chester A. Arthur to recover a sum of money illegally exacted by him as collector of the port of New York.]

Abram Wakeman, for plaintiffs. George Bliss, Dist. Atty., for defendant.

WALLACE, District Judge. The plaintiffs imported plumbago and citronella, the produce of a country east of the Cape of Good Hope, in a French vessel, from the British possessions west of the Cape of Good Hope. By section 18 of the act of June 30th, 1864 (13 Stat. 216), these products, thus imported, were subject to a discriminating "duty of ten per centum ad valorem, in addition to the duties imposed on any such articles when imported directly from the place or places of their growth or production." By section 5 of the act of June 6, 1872 (17 Stat. 233), certain enumerated articles, among which are plumbago and citronella, were declared to be "exempt from duty." The plaintiffs' importation having been made after the last act took effect, and the defendant, as collector of the port of New York, having exacted the discriminating duty of ten per centum, the plaintiffs

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Reversed in 104 U. S. 345.]

bring this action to recover the sum thus exacted.

The case presents the question, whether the act of 1872 repeals by implication, as to articles placed on the free list, the act of 1864. A repeal by implication is not favored, and the earlier act remains in force unless the later is manifestly repugnant to and inconsistent with it. Both acts must stand if both can be given effect as to the particular application involved. This may be done by exempting the articles placed on the free list, except when imported under the special circumstances which subject all importations to a discriminating duty.

Viewing the question as though the earlier and later acts had been passed at the same time, and made separate sections of a comprehensive tariff code, would there be any reasonable doubt that articles not otherwise dutiable would be subject to the discriminating duty? It would seem evident that it was the legislative intent to lay a duty on all products of the growth of countries east of the Cape of Good Hope, without regard to the consideration whether or not such products were otherwise dutiable, because, it is imposed on such as are otherwise subject to a very low duty, as well as upon those subject to the highest duty. The discrimination regards · solely the commerce which is the subject of the provision. Acts imposing discriminating duties are retaliatory measures, designed to countervail the unfriendly or illiberal policy of foreign powers towards our own commerce, and to coerce the removal of obnoxious restrictions which have been placed upon it, and to this end the interests of our own consumers are subordinated or ignored.

Upon the argument, it was urged that the discriminating duty is imposed only on articles otherwise dutiable, and does not apply where no other duty is imposed, and that the language used is so clear as to leave no room for deductions based upon general principles of construction, or predicated upon the general theory of such statutes. If the duty were one "in addition to the duties now imposed by law," there would be room for fair argument that it was intended to be applicable only to articles otherwise dutiable. But, such is not the language. The duty imposed is in addition to the duties imposed upon the products "when imported directly from the place or places of their growth or production." There are no duties imposed specifically on any products "when imported directly from the place of their growth or production;" and, if the argument is sound, it would result that no products are subject to the discriminating duty. There is nothing, therefore, in the language used, to indicate that any distinction between products dutiable and not dutiable was present in the minds of the law makers, when they imposed the discriminating duty. Judgment is ordered for the defendant.

[NOTE. On writ of error sued out by the plaintiffs, this judgment was reversed by the supreme court, Mr. Justice Field delivering the opinion. It was held that the general repealing clause of the act of 1872 declares that all acts and parts of acts inconsistent with its provisions are repealed, and excepts from its operation certain other specified acts and sections, among which the discriminating section of the act of 1864 is not mentioned. From the general language of the repealing clause, and the enumeration of the provisions of the acts excepted from it, it was concluded that it was the intention of congress to put an end, so far as the free list in the fifth section of the act of 1872 is concerned, to the operation of the discriminating act of 1864. 104 U. S. 345.]

---

GAUTIER (PARASSET v.). See Case No. 10,709.

GAUTIER, The J. H. See Cases Nos. 6,399 and 7,319.

GAVIT (KNIGHT v.). See Case No. 7,884.

GAWLEY (HARLEY v.). See Case No. 6,-069.

---

## Case No. 5,279.

### In re GAY.

[1 Hask. 108; 2 N. B. R. 358 (Quarto, 114); 1 Am. Law T. Rep. Bankr. 73; 2 Am. Law T. Rep. Bankr. 52.] [1]

District Court, D. Maine. Jan., 1868.

BANKRUPTCY—DISCHARGE—PREFERENCES — INSOLVENCY—BOOKS OF ACCOUNT.

1. To bar a discharge in bankruptcy for having given a preference to a creditor, the bankrupt, when he gave the preference must have either contemplated bankruptcy or insolvency, or in fact have been insolvent and knew it, or had good grounds for believing it, and have acted on such belief.

[Quoted in Re Doyle, Case No. 4,051. Cited in Re Warner, Id. 17,177.]

2. To bar a discharge, the bankrupt must have designedly and intentionally given a preference, but the creditor receiving it need not have known that his debtor was insolvent.

[Approved in Re Louis, Case No. 8,527. Cited in Martin v. Toof, Id. 9,167; Re Hannahs, Id. 6,032.]

3. A trader is insolvent when he cannot pay his debts in the ordinary course as traders usually do.

[Cited in Graham v. Stark, Case No. 5,676; Hardy v. Clark, Id. 6,058; Re Bininger, Id. 1,420; Hurley v. Smith, Id. 6,920; Re Doyle, Id. 4,050; Grover & Baker Sewing Mach. Co. v. Clinton, Id. 5,845.]

4. Proper books of account for a tradesman are such as disclose the real condition of his affairs, and need not be in any particular form.

[Cited in Re Bellis, Case No. 1,275; Re Brockway, Id. 1,917; Re Archenbrown, Id. 505.]

5. The want of such books will prevent a discharge in bankruptcy.

[Cited in Re Howard, 59 Vt. 595, 10 Atl. 716.]

In bankruptcy. Petition by a bankrupt [Benjamin C. Gay] for his discharge. Credit-

---

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission. 2 Am. Law T. Rep. Bankr. 52, contains only a partial report.]